**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHURANDA SHA'KAARI MELENDEZ and A' SIERRA GIIANNA SPENCER <br><br> Plaintiffs, <br><br> v. <br><br> GLORIA SHACK, et al., <br><br> Defendant | Civil Action No.: 12-1925 (JLL) <br><br> **OPINION** |

**Linares**, District Judge,

This matter comes before the Court by way of a motion to dismiss the Second Amended Complaint (CM/ECF No. 27) by defendants NJ Division of Youth & Family Services, Department of Children and Families, Allison Blake, Sebastian Anthony, Carlos Novoa, Joyce Smith, Gloria Shack, Gloria Cameron-Walton, Migdalia Diaz, Eileen Crummy, Regina Troutman, Christian Arnold, Linda Higgins, and Jean-Louis-Hansy (collectively "Defendants" or "State Defendants"). (CM/ECF No. 30). Plaintiff Shuranda Sha'Kaari Melendez-Spencer ("Shuranda" or "Melendez-Spencer") and her daughter, Plaintiff A'Sierra Giaanna Spencer ("A'sierra" or "Spencer") (collectively "Plaintiffs") filed an opposition on June 28, 2013.[1] Defendants did not file a Reply. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Defendants' motion to dismiss is granted in part and denied in part.

---

[1] The Court notes that the Second Amended Complaint also refers to A'sierra Gianna Spencer as "the daughter, girl, or Asierra" (Compl. 1 ¶ 1), and refers to Shuranda Melendez-Spencer as "the mother." (*Id.*)

## I. BACKGROUND[2]

Plaintiff's Complaint was filed on May 8, 2013. This Court's jurisdiction is premised on 28 U.S.C. § 1331, as Plaintiffs bring this action *pro se* pursuant to 42 U.S.C. § 1983. Plaintiffs also assert a number of state claims, over which the Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

The Second Amended Complaint explains:

> This is an action to remedy federal and state civil rights violations and tortious conduct, committed by State of New Jersey and its employees, against the Plaintiff and her mother. The daughter was improperly detain since,day she was wrongfully taken on or about July 3rd 03,where child was force by defendant unlawful action(s);to remain in DYFS care and custody for approximately 8 years,until she was returned to her mother,on November 1 2010.

(Second Amended Complaint ¶ 5.A) ("Compl.") (no alterations supplied). Further:

> [d]uring such relevant time,prior a significant,conclusion,that the original serious additional allegations,from 2003 which led,to keeping her child away from her, such allegations(33)serious in nature, were finally overturned,and unfounded by Division Youth Family Services,and the Office of the Attorney General 2010,hence allowing mom to sue,along with child victim,along with brand new fact(s)multiple in 2010 and throughout,May June of 2011,when mom and child rush to put state on required notice.

(Compl. ¶ 5.B) (no alteration supplied).

Defendants Migdalia Diaz, Joyce Smith and Jean Louis Hansy are DYFS "caseworkers who [were] assigned the task of arranging for [A'Sierra's] care and custody." (*Id.* ¶¶ 4, 8.) Defendants Carlos Novoa, Sebastian Antony, Valerie Talmadge, Allison Blake, Gloria Cameron-Walton, Regina Troutman, Christian A. Arnold, Linda Higgins, Eileen Crummy and Gloria Shack are also DYFS employees assigned "supervision" of A'Sierra. (*Id.* ¶¶ 4, 11, 21, 23, 30.) In addition,

---

[2] Neither the Second Amended Complaint nor Plaintiffs' Opposition contain page numbers or consecutively numbered paragraphs. Accordingly, the Court will refer to those page numbers automatically assigned by CM/ECF and will refer to paragraph numbers where possible.

> [d]uring such time in 2003 throughout 2010; child plaintiff, was in the custody of
> DYFS and its caseworkers these defendants failed to adequately monitor the
> daughter's safety and well-being,failed regularly,under oath,and in sworn-
> affidavits, to disclose where the child was living,where she was placed or
> location,misrepresented,child condition,to four judges,presiding for eight years;
> and failed to importantly,report such condition ; the true status of child,to the
> mother,the family superior courts,and mental health professionals,relying on
> intentional false statements from casework does;defendant novoa,smith,diaz,et;al
> DYFS when it came to reuniting,under one roof,mother and child,causing
> plaintiff's harm.

(*Id*. 3 ¶ B) (no alteration supplied).  The SAC also contains details about Melendez-Spencer's childhood before being separated from her mother and the saga which eventually led to her removal from her childhood home.  (*Id*. 3-4 ¶¶ 6-8.)

The large majority of the allegations relate to horrific events which allegedly occurred between 2003 and 2009, including physical and sexual abuse as well as alleged false statements by caseworkers regarding the wellbeing of Spencer and allegations that certain caseworkers had knowledge of Spencer's mistreatment.  Plaintiffs also allege that despite the representations in court by DYFS employees that Spencer was doing well, throughout that time Spencer lived in a number of foster or group homes where she suffered physical and sexual abuse at the hands of multiple abusers.

Plaintiffs allege that Defendants Joyce Smith, Midgalia Diaz, Valeria Talmadge, Carlos Novoa, Sebastian Antony, and Gloria Cameron-Walton did not adequately investigate the abuse allegations regarding A' Sierra.  (*Id*. ¶ 9.)  Defendants Novoa, Cameron-Walton, Regina Troutman and Sebastian Antony allegedly falsely reported that A'Sierra was in the custody of her paternal grandmother or father, although the child was not in fact there.  Plaintiffs further allege that Defendants did not monitor her daughter while under DYFS care and "mis-stat[ed] her status."  (*Id*. ¶ 11.)  For example, Defendants reported that A'Sierra was doing well living with her father and his fiancé despite that she had attempted suicide and had an extended hospital

stay.  (*Id.* ¶¶ 14, 17.)  Defendants Troutman and Novoa "submitted sworn affidavits stated [sic] that child was fine and there was no risk to her." (*Id.* ¶ 15.)  "[Defendants] made little or no effort to conduct or complete and investigation of the . . . abuse allegations against [Spencer]." (*Id.*)

A'Sierra was "moved by DYFS to a group home" in September of 2007.  (*Id.* ¶ 20.) Plaintiff alleges that "conditions were so poor and the child suffered physical and sexual[] abuse[] in the home."  (*Id.*)  DYFS ignored the alleged abuse and "failed to change the home or disclose the abuse to her mother or the court."  (*Id.*)  Specifically, Defendant Eileen Crummy reported that A'Sierra was "safe."  (Compl. ¶ 21.)  However, Shuranda received a letter that the foster parent "was choking and pulling child by the hair and shove[d] her against the wall." (*Id.*) Defendant Joyce Smith "knew of the sex abuse to the child . . . yet appeared in court" and reported that the child was "fine." (*Id.*)  Plaintiff alleges that Defendant Joyce Smith deliberately misrepresented the facts of the alleged abuse.  (*Id.*)

DYFS sent A'Sierra to the Devereaux Residential Treatment Center in 2008.  (*Id.* ¶ 22.) "At the facility, she was . . . sexually molested by a man" and was allegedly filmed in "sexually explicit, graphic videos."  (*Id.*)  Defendant Smith allegedly "knew [Shuranda] had evidence of" these abuses and promised to investigate.  (*Id.*)  Plaintiffs allege that Defendant Smith "never showed up, nor bother[ed] to call the mother back."  (*Id.*)  Defendant Smith "cit[ed] in a written report" that there were no concerns or risk to A'Sierra in the Treatment Center.  (*Id.*)  In addition, Spencer allegedly encountered online nude and sexually explicit pictures and videos of her daughter.  (*Id.*)  Melendez-Spencer allegedly contacted a Federal Bureau of Investigations

agent to report that her daughter may be involved in sex trafficking. (*Id.*)[3] However, nothing was done. (*Id.*)

Plaintiff alleges that Defendants Smith and Arnold withheld information including A'Sierra's psychological issues and the location of A'Sierra. (*Id.* ¶ 23.) "Defendant Smith further failed to disclose ongoing abuse in the father's home . . . including an incident involving choking." (*Id.* ¶ 24.) Further, Smith "went on the record again citing she ha[d] visited the child days prior at [her] dad's home and all was well with the child." (*Id.* ¶ 26.) However, Plaintiff alleges that A'Sierra was living in another group home at that time. (*Id.*)

Sometime thereafter, Spencer was transferred to the Ewing Group Home, where she was allegedly beaten by a staff member and bullied or threatened by other residents. (*Id.* ¶ 25.) Spencer was not informed that her daughter had been transferred to a different group home. (*Id.*) On September 1, 2008, A'Sierra was allegedly sexually assaulted by an individual named Hadikbha Patel, who allegedly offered to drive her to see her mother, but instead sexually assaulted her "by fondling her, penetration(vaginal area)and her breast area, where he also exposed himself to her." (*Id.* ¶ 28.) A'Sierra allegedly informed the police. (*Id.*) DYFS allegedly knew the facts of the assault but hid those facts from the court and neglected to investigate the incident. (*Id.*) Nonetheless, on or around the same day, Defendants Smith and Arnold allegedly told the presiding judge that "she ha[d] visited the child days prior at dad's home and all was well with the child . . . ." (*Id.*) Defendants Diaz, Shack and Higgins allegedly hid the assault from Plaintiff Melendez-Spencer when they spoke to her throughout September 2008, and continued to insist that the A'Sierra was doing well at her father's home. (*Id.* ¶ 30.)

---

[3] For the sake of completeness, the Court notes that it is unclear from the Complaint whether Plaintiff Spencer or the F.B.I. agent believed that A'Sierra may have been involved in sex trafficking: "Mom contact F.B.I.,who felt child was feasibly involve with sex trafficking,as far as Philadelphia,PA; as told to mom,premise on documentation discovered,by mom 2010." (Compl. ¶ 22) (no alteration supplied).

Plaintiff alleges that "[Smith] surely knew the entire time [that the] child was not even with dad and there were serious issues happening after her removal from mom." (*Id.*)

Subsequently, "the child was placed in another foster parent home" with Defendant Donald Cowan. (*Id.* ¶ 31.) Plaintiff alleges that Defendant Cowan abused A'Sierra physically and emotionally. (*Id.*) Specifically, "[s]he was hit with a telephone, and he would throw or kick things at her . . . ." (*Id.*) In addition, while there, A'Sierrra was allegedly fondled and kissed by a woman in her twenties. (*Id.*) Plaintiff alleges that she informed Defendants Diaz and Smith and was told that they would investigate, but that never came to fruition. (*Id.*) Despite everything, Plaintiff Spencer alleges that she was not permitted to see A'Sierra throughout all of 2009. (*Id.* ¶ 32)

The Complaint contains a number of allegations relating to the failure of DYFS caseworkers to follow up on information that Spencer was in danger. (*See e.g. Id.* ¶¶ 31-32.) Plaintiff alleges that when she informed DYFS about the abuse, Defendants Diaz and Smith promised to investigate the matter but never did. (*Id.*) Defendant Smith "did not listen to [A'Sierra]" when she tried to inform Smith of her "mistreatment." (*Id.*)

Plaintiff also alleges that A'Sierra ran away from Defendant Cowan's custody and was homeless for a period of time. (*Id.* ¶¶ 33, 34.) Defendants Smith and Diaz denied that this ever occurred. (*Id.*) However, Plaintiffs allege that those statements contradict doctor and police reports from the relevant time. (*Id.* ¶ 34.)

"In January 2010 [D]efendants Arnold, Smith [and] Shack informed [Shuranda that her] child was doing well in school . . . and [was] attending school in Plainfield, New Jersey." (*Id.* ¶ 37.) However, Plaintiff learned "by a police bulletin . . . [that] her daughter was lost in the system." (*Id.* ¶ 38.) "The child was missing and un-accounted for during a prolonged period in

6

2010. In a court appearance on March 28, 2010, [Defendants] Smith and Arnold failed to disclose that the child was missing and in substantial danger." (*Id.* ¶ 39.) A medical report from a hospital stay indicates that A'Sierra "had suffered a horrible incident of prolonged sexual abuse," including "gang rape." (*Id.*) "Dr.report disclosed how child was 'toss out after the gang-rape" on the street, without barely any clothing on, later to be picked up by DYFS, and her father who took her for another rape kit examination, at the hospital. Caseworker never informs mother or the judge,during a 2010 Court Review,swore-in and adage the child,is fine." (*Id.* ¶ 39) (no alteration supplied). Specifically, Plaintiff alleges that "Internal CPS reports,from end of March 2010 will prove,further significant;evidence,all withheld by state caseworkder does;Mrs.Diaz and or by Defendant Joyce Smith and DYFS.Document also prove child had to dance nude to stay at a grown man house at time,and for other men,over eighteen years old,under state"supervision." (*Id.* ¶ 35) (no alteration supplied). At some point, Melendez learned that "her daughter was lost in the system that was supposed to protect her." (*Id.* ¶ 38.) Significantly, Defendants Smith and Arnold never disclosed that Plaintiff Melendez-Spencer was missing and had suffered continued horrific abuse. (*Id.*)

Plaintiffs further allege that Defendant Diaz lied when she told Plaintiff Melendez-Spencer that A'Sierra's father was able to take care of A'Sierra. (*Id.* ¶ 43.) In fact, A'Sierra's father had allegedly informed Smith and Diaz that he was unable to care for A'Sierra. (*Id.*)

Plaintiffs allege that Defendants Smith and Arnold "failed to disclose again that on or about May 5, 2010, the child attempted to commit suicide." (*Id.* ¶ 44.) Defendant Smith told Plaintiff that A'Sierra was "always lieing [sic] and she just has a behavorial [sic] problem." (*Id.* ¶ 46.) Despite reports from Defendants Smith and Diaz, a staff member allegedly beat A'Sierra and she was "injured, black and blue, with blood visible in [her] eye from a popped vessel." (*Id.*)

Plaintiff was finally permitted to see her child on October 21, 2010.  (*Id.* ¶ 50.)  During that visit, A'Sierra allegedly told her mother that Defendant Smith "would yell at her and blame her for the abuse and even rape and [say] it was from her being a '[b]ad' child."  (*Id.*). Plaintiff alleges that A'Sierra was not fed properly, was malnourished, received inadequate medical and dental care, and had not been to school in several years.  (*Id.* ¶ 52.)

Sometime in 2010, Plaintiff Melendez-Spencer was cleared of any wrongdoing: "DYFS Cleared mom <u>twice</u> during 2010 again of the 33 allegations, yet failed again to return child,after having no legal grounds to keep child from her own mom.Mom was cleared of such wrongdoing twice,after the long-delayed investigation ordered by appeal;cleared 2010."  (*Id.* ¶ 44) (no alteration supplied).  The Court notes, however, that the procedural history and posture of the underlying state proceedings are unclear from Plaintiffs' filings.  A'Sierra was allegedly able to return to her mother's home on or about November 1, 2010.  (*Id.* ¶ 53.)

Plaintiffs filed the instant action on March 27, 2012.  (CM/ECF No. 1.)  The Complaint presently before the Court asserts the following causes of action: (1) 42 U.S.C. § 1983 -violation of the right to substantive due process arising from a special relationship between the State and A'Sierra; (2) negligence and gross negligence; (3) fraud; (4) violation of the duty to visit A'Sierra, <u>N.J.S.A.</u> 30:4C-25, and the New Jersey Child Placement Bill of Rights <u>N.J.S.A.</u> 9:6B-1 to 9:6B-6; (5) 42 U.S.C. § 1983 - violation of the right to substantive due process arising from a state created danger; (6) violation of New Jersey statutory and regulatory duties including the affirmative duty to report and investigate all abuse and neglect; (7) "inapplicability of res judicata"; (8) failure to adequately approve, screen, and monitor A'Sierra's living facilities; and (9) negligence.[4]

---

[4] Plaintiffs refer to this cause of action as the tenth cause of action.

On September 28, 2012, Plaintiffs filed an Amended Complaint. (CM/ECF No. 8.) The

Court dismissed that Complaint on January 24, 2013. (CM/ECF No. 18.) Plaintiff filed a

Second Amended Complaint on May 8, 2013. (CM/ECF No. 27.)


## II. LEGAL STANDARD

As Plaintiffs are proceeding *pro se*, the Court will construe the Amended Complaint

liberally and hold it to a "less stringent standard[] than formal pleadings drafted by lawyers."

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976);

*Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). Notwithstanding, *pro se* litigants must

still plead the essential elements of their claim and are not excused from conforming to the

standard rules of civil procedure. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e

have never suggested that procedural rules in ordinary civil litigation should be interpreted so as

to excuse mistakes by those who proceed without counsel."). The Court must apply the

applicable law, irrespective of whether the *pro se* litigant has mentioned it by name. *Byrne v.

Cleveland Clinic*, 684 F. Supp. 2d 641, 648 (E.D.Pa. 2010).

Under Federal Rule of Civil Procedure 8(a), a complaint must set forth the following: (1)

"a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain

statement of the claim showing that the pleader is entitled to relief"; and (3) a demand for the

relief sought. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937,

1949 (2009). A Plaintiff must plead plausible, factual content that enables the court to draw a

reasonable inference that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at

678. To be plausible, a complaint must demonstrate "more than a sheer possibility that a

defendant has acted unlawfully." *Id*. Courts are not bound, however, to "accept as true legal conclusion[s] couched as . . . factual allegation[s]." *Id*.

From the pleading, the Court must be able to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. In so doing, a court must "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

## III. DISCUSSION[5]

Defendants make the following primary arguments in support of their motion to dismiss: (1) Plaintiffs' action is barred by the doctrine of *res judicata*; (2) sovereign immunity bars Plaintiffs from bringing suit against state agencies at all and the state employees in their official capacities; (3) this Court lacks jurisdiction per the *Rooker-Feldman* doctrine; and (4) Plaintiffs' claims against the state employees must be dismissed because those defendants have qualified immunity. The Court will address each.[6]

---

[5] Defendants argue that "Plaintiff Shuranda S. Melendez-Spencer appears to be improperly representing her adult daughter, A'Sierra Giianna Spencer, in violation of 28 U.S.C. § 1654 and F.R.C.P. 11(a). Shuranda S. Melendez-Spencer alone signs most communications with the [C]ourt, in violation of F.R.C.P. 11(a)." (Def.'s Mot. 2). However, both Plaintiffs sign the Opposition. Accordingly, the Court declines to strike same, but cautions Plaintiffs to comply with Federal Rule of Civil Procedure 11(a) going forward.

[6] The Court notes that Plaintiffs include a number of allegations in their Opposition which are not pled in the Complaint. However, a plaintiff may not amend a complaint through briefs in opposition to a motion to dismiss. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Accordingly, the Court will limit its consideration to only those allegations in the SAC.

## A.      Sovereign Immunity

Defendants argue that "Eleventh Amendment immunity bars recovery against the State agency defendant (DYFS), as well as the suits against State employees in their official capacities (the DYFS employee defendants). It is plain from Plaintiffs' complaint that their allegations all stem directly from the DCF workers' actions surrounding the care and custody of A'Sierra." (Def.'s Mot. 13).

Eleventh Amendment immunity from suit extends to agencies, departments, and state officials when the state is the real, substantial party in interest. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (suits against state officials in their official capacities are suits against the State); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 101-02 (1984). "Courts in this district have long held that DCF and DYFS are, 'beyond dispute,' arms of the state for sovereign immunity purposes." *Sweet-Springs v. Dept. of Children and Families*, Civ. No. 12-706, 2013 WL 3043644, at * 5 (D.N.J. June 17, 2013) (citation omitted); *Simmerman v. Corino,* 804 F. Supp. 644, 650 (D.N.J.1992); *Pena v. Div. of Child & Family Servs*., No. 08–1168, 2010 WL 3982321, at *5 (D.N.J. Oct.8, 2010).; *D.B. ex rel. Steinnabel v. Div. of Youth and Family Servs*., Civ. No. 12-1559, 2012 WL 5406079, at * 4 (D.N.J. Nov. 5, 2012). Accordingly, the Court dismisses with prejudice Plaintiffs' § 1983 claims as to the state agency defendants.[7]

The Court notes, however, that the Complaint provides that Plaintiff is suing the individual defendants in their individual and official capacities. (Compl. ¶ 4). In Opposition to

---

[7] There are three narrow exceptions to Eleventh Amendment immunity: "(1) abrogation by Act of Congress; (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 345 (3d Cir. 2003) (citing *MCI Telecomms. Corp. v. Bell-Atlantic-Pennsylvania Serv.*, 271 F.3d 491, 503 (3d Cir. 2001), cert. denied, 537 U.S. 941, 123, S.Ct. 340, 154, 154 L.Ed.2d. 247 (2002)).  Defendants contend that Plaintiffs do not identify any exception.  With regard to the section 1983 claims, the Court agrees.

the instant motion, Plaintiffs reiterate that they are suing the individual defendants in their individual capacities. (Pls.' Opp'n. 17 ¶¶ 40-41; Compl. ¶ 4). Accordingly, the Eleventh Amendment does not bar Plaintiffs' claims against the individual defendants to the extent that they are not sued in their official capacity. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) ("In a suit against state officials in their 'personal' capacity, however, where the plaintiff seeks recovery from the personal assets of the individual, the state is not the real party in interest; the suit is therefore not barred by the Eleventh Amendment."). Accordingly, the Court dismisses with prejudice Plaintiffs' section 1983 claims insofar as they are asserted against Defendants in their official capacity.

Defendants further submit that "[t]he State's sovereign immunity applies to both state law claims and federal civil rights claims." (Def.'s Mot. 14). However, Defendants do not specify which state law claims they submit are barred by sovereign immunity. It is far from apparent that sovereign immunity warrants dismissal of all of Plaintiffs' claims. *See e.g. K.J. ex rel. Lowry v. Div. of Youth and Family Servs.*, 363 F. Supp. 2d 728, 748 (D.N.J. 2005) (denying motion to dismiss action brought by minor children and finding that New Jersey's Child Placement Bill of Rights provides a private right of action and that minor children stated a cause of action that fell within waiver of New Jersey Tort Claims Act). As discussed above, Plaintiffs assert the following state claims: negligence and gross negligence (Counts 2 and 10); fraud (Count 3); violation of the duty to visit A'Sierra, N.J.S.A. 30:4C-25, and the New Jersey Child Placement Bill of Rights N.J.S.A. 9:6B-1 to 9:6B-6 (Count 4); violation of New Jersey statutory and regulatory duties including the affirmative duty to report and investigate all abuse and neglect (Count 6); failure to adequately approve, screen, and monitor A'Sierra's living facilities

(Count 8). Therefore, the Court denies Defendants' motion with regard to Plaintiffs' state law claims.

## B. Qualified Immunity

A prima facie case under § 1983 requires a plaintiff to demonstrate: "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir. 1996). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir. 2000) (citation omitted).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted); *see also Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002) (citation omitted). The Supreme Court has repeatedly emphasized the importance of resolving immunity questions at the earliest possible stages of litigation. *Pearson*, 555 U.S. at 232; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Defendants bear the burden of establishing that they are entitled to qualified immunity. *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989) (citing *Ryan v. Burlington Cnty.*, 860 F.2d 1199, 1204 n. 9 (3d Cir. 1988), *cert denied*, 490 U.S. 1020, 109 S.Ct. 1745 (1989)).

In the context of their argument regarding qualified immunity, Defendants urge that "Plaintiffs' Complaint does not contain allegations constituting violations of clearly established statutory or constitutional rights by State Defendants." (Def.'s Mot. 17). In so arguing, Defendants focus on the removal of Spencer: "A DYFS action to remove a child in an unsafe environment does not constitute a violation of clearly established statutory or constitutional rights, and qualified immunity should apply to the State Defendants in this case. Actions to remove a child taken in good faith pursuant to *N.J.S.A.* 9:6-8.29 are immune from liability. *N.J.S.A.* 9:6-9.29(c)." (Def.'s Mot. 18). First, Plaintiffs expressly plead and argue that the actions of DYFS employees were not taken in good faith. Second, although admittedly, the Complaint is not clear at times, Defendants' reading is unduly narrow.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Stoneking*, 882 F.2d at 726 ("The defendants are entitled to qualified immunity if reasonable officials in the defendants' position at the relevant time could have believed, in light of clearly established law, that their conduct comported with established legal standards."). Qualified immunity analysis requires a two-step inquiry: (1) whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right; and (2) if so, whether the constitutional or statutory right allegedly violated was "clearly established. *Saucier*, 533 U.S. at 201; *Pearson,* 555 U.S. at 236; *Curley*, 298 F.3d at 277; *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006).

Defendants do not address the overwhelming majority of allegations, which relate to the treatment of Spencer after her removal from her mother, including various forms of ongoing

physical and sexual abuse, and neglect. Nor do Defendants address the allegations that certain of the State Defendants repeatedly lied to the state court as well as Melendez-Spencer about Spencer's situation, despite being aware of the abuse or ignoring complaints or reports. Indeed, Plaintiffs allege that at least one case worker "would yell at her and blame her for the abuse and even rape and [say] it was from her being a '[b]ad' child." (Compl. ¶ 50). They do not address that Spencer was allegedly "lost" in the DYFS system, which resulted in additional abuse and neglect. Finally, they do not address the fact that A'Sierra asserts claims pursuant to § 1983 for violations of her right to bodily integrity under the Due Process Clause of the Fourteenth Amendment in light of the following: (1) the State entered into a special relationship with her by placing her in the DYFS system (Count 1); and (2) the state-created danger doctrine (Count 5).

"As a general proposition, a state's failure to protect an individual against private violence does not constitute a violation of due process." *Nicini*, 212 F.3d at 806 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989)). However, "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Nicini*, 212 F.3d at 806 (quoting *DeShaney*, 489 U.S. at 198). The Third Circuit has "explicitly recognized two exceptions to this general rule. First, the state has a duty to protect or care for individuals when a 'special relationship' exists. Second, the state has a duty when a 'state-created danger' is involved." *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006). A'Sierra asserts claims based on both exceptions.

With regard to the first, the Third Circuit has expressly held that "when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties. The failure to perform such duties can give

rise, under sufficiently culpable circumstances, to liability under section 1983." *Nicini*, 212 F.3d at 808.[8]  As to the second, the state-created danger doctrine provides an exception to the general rule where the following elements are met:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."

*Sanford*, 456 F.3d at 303-04 (3d Cir. 2006); *accord Brown v. School Dist. of Phila.*, 456 F. App'x. 88, 90-91 (3d Cir. 2011).

In addition, the State Defendants neglect to mention the substance of Melendez-Spencer's claims, namely that through continued lying and misrepresentation of facts to Plaintiff Melendez-Spencer as well as the state court, Defendants wrongfully deprived her of custody of A'Sierra and visitation rights over a number of years.   This is allegedly so even though there was no substantial danger or legal ground.  (*See e.g.* Compl. ¶ 35).  Despite Defendants' conclusory assertion that Plaintiffs fail to identify a clearly established constitutionally or statutorily protected right, "[t]his circuit has recognized 'constitutionally protected liberty interests that parents have in the custody, care and management of their children.'"  *Crawford v. Washington Cnty. Children and Youth Servs.*, 353 F. App'x. 727, 730 (3d Cir. 2009) (citing *Croft v. Westmoreland Cnty. CYS*, 103 F.3d 1123, 1125 (3d Cir. 1997)); *Miller v. City of Phila.*, 174

---

[8] Although Plaintiff does not assert a cause of action to this effect, Plaintiffs' filings make reference to policies created by certain defendants.  That is a similar but independent basis for liability. A viable section 1983 claim exists where a plaintiff alleges that defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused constitutional harm.  *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 725, 729 (3d Cir. 1989) ("State officials may [not] escape liability arising from their policies maintained in deliberate indifference to actions taken by their subordinates" and "public officials in administrative positions with notice of assaulting behavior by their subordinates must not take actions which communicate that they encourage or even condone such behavior.").  This is so even if there is no predicate duty to protect the plaintiff by virtue of a special relationship. *Id.*

F.3d 368, 376 (3d Cir. 1999); *Tilson v. School Dist. of Phila.*, Civ. No. 89-1923, 1989 WL 127510, at * 1 (D.N.J. Oct. 23, 1989) ("Standing under § 1983 has been found from deprivation of a parental liberty interest in the preservation of the family when the family relationship has been completely eliminated."); *Blake v. Washington Cnty.*, Civ. No. 10-0793, 2010 WL 5140617 (W.D. Pa. Dec. 9, 2010).

As Defendants do not address or acknowledge the majority of the allegations in the Complaint which form the substance of Plaintiffs' claims, the Court cannot agree with Defendants' assertion that "Plaintiffs' Complaint does not contain allegations constituting violations of clearly established statutory or constitutional rights by State Defendants." (Def.'s Mot. 17). Finally, the parties do not dispute that the State Defendants acted under color of state law. Accordingly, Defendants' conclusory assertions fall far short of carrying their burden that dismissal is appropriate on this basis.

### C. Rooker-Feldman

The *Rooker-Feldman* doctrine precludes lower federal courts from exercising jurisdiction over claims that would require them to review a final judgment of a state court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983). Accordingly, it bars jurisdiction if the federal claim was "actually litigated" in state court prior to the filing of the federal action, or if the federal claim is "inextricably intertwined" with state adjudication. *ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 211 (3d Cir. 2004). However, "[t]he doctrine is narrow." *Dukes v. Lancer Ins. Co.*, 390 Fed. App'x. 159, 161 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1516 (2005). The Third Circuit has enunciated four requirements for the doctrine to apply: (1) the federal plaintiff lost in state court; (2) "the plaintiff

complains of injuries caused by the state-court judgments"; (3) said judgments were rendered before the federal suit was filed; and (4) "plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil*, 544 U.S. at 284).

As to the second requirement, the Third Circuit explains that "[t]he critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Great Western Mining*, 615 F.3d at 167 (quoting *Hoblock v. Albany Cnty. Board of Elections*, 422 F.3d 77, 88 (3d Cir. 2005)). Stated another way, "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Id*. Here, Plaintiffs' injuries were not "caused by" the state proceedings, but the egregious conduct of DYFS employees thereafter. *Id*. ("When, however, a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction."); *Dukes v. Lancer Ins. Co.*, 390 F. App'x. 159, 161-62 (3d Cir. 2010).

The gravamen of Plaintiffs' complaints relate to the alleged mistreatment of A'Sierra while in the DYFS system as well as the continued misrepresentation and lies of caseworkers throughout that time period. In Opposition, A'Sierra writes that she

> is suing from injuries from July 2003 until November 1 20010,while living in
> foster homes,residential homes;where she was severely and repeatedly abused,not
> fed at times;malnourished;sex abuse,gange-rape and sexually assaulted
> fondled,drugged; physical restraint;no schooling;severly-beaten,bullied,
> emotional abused,pschiatrically abused,hopitalize in 9 hospitals,while living away
> from mom.

(Pls.' Opp'n. 14) (no alteration supplied).  In addition, Shuranda's claim rests on the alleged

repeated misrepresentation, lying, and fraud of caseworkers who informed her that A'Sierra was

fine and living with her father while continuing to wrongfully deprive her of her parental rights.

In addition, Plaintiffs argue that the *Rooker-Feldman* doctrine is inapplicable due to the

following:

> State Office of Attorney General,issued to the Superior Court,of Union
> County;Family Chancery part,an order citing how the previous allegations,used
> against the mother for 7 years,were finally investigated are **OVERTURNED**
> 2010.  Hence, erroneously stated by defense counsel, the Rooker-Feldman simply
> do not apply here  . . . The plaintiffs, are not suing to overturn any part of the prior
> 1 isolated,10 years ago 03 corporal punishment,that state claim to have proven.
> This was NOT the premise of why child was kept away for almost 8 years
> unconstitutionally.The reason why are the **33** allegations used as truth,against
> plaintiff Melendez.

(Pls.' Opp'n. 17) (no alteration supplied).  As the Third Circuit has explained, as a general

matter, "the interests served by *Rooker-Feldman* are quite similar to those served by giving a

state court judgment res judicata effect in a subsequent federal proceeding.  If a litigant resorts to

a state court and suffers an adverse judgment, a lower federal court must respect that judgment

unless and until it is overturned."  *E.B. v. Verniero*, 119 F.3d 1077, 1091 (3d Cir. 1997).

Defendants only address the initial 2003 removal and do not address the applicability of the

doctrine in light of the subsequent proceedings and determinations in state court.  Thus, on the

limited record before the Court, the procedural posture and history as well as the exact nature of

the state court proceedings are unclear.  Accordingly, the Court declines to dismiss Plaintiffs'

claims on this basis at this time.

**D.  *Res Judicata***

As discussed in its previous Opinion in this matter, Plaintiff Melendez-Spencer

previously brought suit in 2008 seeking redress on behalf of herself and her daughter.  *Melendez*

*v. New Jersey Dept. of Children and Families,* Civ. No. 08-1339. This Court dismissed Plaintiff Melendez-Spencer's previous action due to the following: (1) to the extent Defendants were state officials acting in their official capacity, they were not amenable to suit under § 1983; (2) Melendez-Spencer's claims were time barred under the two year statute of limitations governing § 1983 claims; and (3) Melendez-Spencer lacked prudential standing to sue on behalf of her child. *Melendez,* 2010 WL 1032667 (D.N.J. Mar. 16, 2010).

*Res Judicata* will bar a future proceeding where: 1) the judgment in the first action is valid, final, and on the merits; 2) the parties in both actions are the same or are in privity with each other; and 3) the claims in the second action arise from the same transaction or occurrence as the claims in the first action. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412, 591 A.2d 592 (1991). *Res judicata* functions as an affirmative defense to suit, placing the burden on the party asserting such a defense to show that it applies. *United States v. Athlone Indus., Inc.,* 746 F.2d 977, 983 (3d Cir.1984).

Defendants argue that each element is met in this case and that many, if not all, of Melendez-Spencer's claims are barred for three reasons. First, the previous case was dismissed for failure to state a claim pursuant to 12(b)(6). Second, Shuranda and most defendants are parties to both actions. Third, "the same civil rights causes of action arising out of plaintiff's allegations surrounding the removal of A'Sierra are at issue in both cases." (Def.'s Mot. 9-10).

In their Opposition, Plaintiffs do not dispute that the first two prongs are met. Nor do they dispute that the claims previously asserted by Shuranda are in fact barred by the doctrine. However, they clarify that Plaintiff Melendez-Spencer is only bringing claims arising from events which took place in 2010, when she

> "was cleared,of any wrongdoing,the 33 serious allegations,that kept child out of
> her home,no visitation,no phone calls,no emails,zero contact for several

years,unconstitionally; no information on the 'true' status, condition of her child, but to hear child was always doing well, and not at risk, despite her horrific act(s)involving gange rape, sodomy, sex abuse, molestation; malnourish, chairs thrown at child, as already in totality, enumerated . . . ."

(Pl.'s Opp'n. 2).  Therefore, Plaintiff Melendez-Spencer asserts that her claims stem from more than "plaintiffs allegations surrounding the removal of A'Sierra."  Defendants do not address Shuranda's claims, which she contends arose in 2010 and were not part of the previous suit. Therefore, Defendants do not satisfy their burden of demonstrating that the doctrine of *res judicata* precludes Plaintiff Melendez-Spencer's claims.

## IV.  CONCLUSION

Therefore, for the reasons set forth above, Defendants' motion is granted in part and denied in part.  The Court dismisses with prejudice Plaintiffs' claims pursuant to 42 U.S.C. § 1983 as to DYFS and the individual defendants to the extent that those claims are brought against them in their official capacity.  The remainder of Defendants' motion to dismiss is DENIED.

An appropriate Order accompanies this Opinion.

Dated: 7.23.2013

  s/ Jose L. Linares
Jose L. Linares
United States District Judge