**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELENDEZ, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> SHACK, et al., <br><br> Defendants. | Civil Action No. 12-1925 (JLL) (JAD) <br><br> **OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of the State Defendants' motion to dismiss Counts XVII and XIX of Plaintiffs' Fourth Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Those Counts allege substantive due process claims under the United States and New Jersey State Constitutions on behalf of Plaintiff Shuranda Sha'Kaarii Melendez-Spencer ("Shuranda"). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court **GRANTS** the State Defendants' motion.

**I.   BACKGROUND**

Plaintiff Shuranda is the mother of Plaintiff A'Sierra Giianna Spencer ("A'Sierra"). (Compl. ¶ 6, ECF No. 68). In July 2003, Defendant DYFS received a complaint alleging that Shuranda had physically abused A'Sierra, which prompted DYFS to remove A'Sierra from

---

[1] All references to the "State Defendants" refer to the New Jersey Division of Youth and Family Services ("DYFS"), the New Jersey Department of Children and Families, Sebastian Anthony, Christian Arnold, Allison Blake, Gloria Cameron-Walton, Eileen Crummy, Migdalia Diaz, Linda Higgins, Jean Louis-Hansy, Carlos Novoa, Gloria Shack, Joyce Smith, and Regina Troutman, collectively.

1

Shuranda's custody. (*Id.* at ¶¶ 22, 64). A'Sierra was then ten years old, and remained in DYFS's care, custody, and supervision for the next seven years. (*Id.* at ¶¶ 4, 5). Throughout that time, A'Sierra bounced between homes and clinics, and was homeless from about February to April 2010. (*Id.* at ¶¶ 23, 24, 35, 36, 38, 47, 50, 52, 55, 56). Shuranda was permitted to have little to no visitation with A'Sierra during those seven years, and was not apprised of the various instances of abuse and neglect suffered by A'Sierra. (*Id.* at ¶¶ 27-29). The State Defendants also misled Shuranda about A'Sierra's wellbeing—they repeatedly made it known or otherwise created the perception that A'Sierra was "doing fine," when in fact she was suicidal, on multiple antidepressants, hospitalized, and physically and sexually abused while in DYFS's custody. (*Id.* at ¶¶ 27, 31, 34, 36, 45-48, 51-54). A'Sierra finally reunited with Shuranda on November 1, 2010, one day after her eighteenth birthday.[2] (*Id.* at ¶¶ 1, 4).

Plaintiffs allege that the State Defendants failed to adequately investigate the initial complaint made against Shuranda in July 2003 before removing A'Sierra from her custody. (*Id.* at ¶ 65). Plaintiffs also allege that the State Defendants improperly relied on a report prepared by Stephanie Auerbach in October 2003 (the "October 2003 Report"), which listed thirty-three allegations of abuse against Shuranda. (*Id.* at ¶¶ 88-94). According to Plaintiffs, the State Defendants failed to recognize that Auerbach's clinical social worker license had expired when she prepared the October 2003 Report, and repeatedly failed to investigate the unsubstantiated allegations contained therein, contrary to multiple court orders requiring them to do so. (*Id.* at ¶¶ 92-94, 104, 109, 115, 140).

Justin Kurland, a caseworker, eventually investigated Auerbach's allegations in 2007. (*See id.* at ¶ 134). After two weeks of investigation, Kurland concluded that there was support for Auerbach's allegations. (*See id.*). Plaintiffs allege that Kurland could not have performed a

---

[2] A'Sierra was born on October 31, 1992. (Compl. ¶ 4).

2

proper investigation in such a short period of time. (*Id.*). As the Court understands it, drawing all reasonable inferences in favor of Plaintiffs, they also allege that the Department of Children and Family Services eventually overturned Kurland's 2007 finding by letter dated August 31, 2010. (*See id.* at ¶ 231).

The State Defendants now move to dismiss Counts XVII and XIX of Plaintiffs' Complaint. (Defs.' Br. 7, ECF No. 71-2).[3] Those two counts are brought on behalf of Shuranda, and allege that the State Defendants are liable under the state-created danger doctrine. (Compl. ¶¶ 381-92, 408-19). Count XVII is brought pursuant to 42 U.S.C. § 1983, and Count XIX is brought pursuant to the New Jersey State Constitution. (*Id.*). The Court has jurisdiction over Count XVII pursuant to 28 U.S.C. § 1331, and jurisdiction over Count XIX pursuant to § 28 U.S.C. § 1367.

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the

---

[3] The State Defendants numbered only one page of their Brief, which they numbered as page one. (*See* Defs.' Br. 1). When citing to specific pages of the State Defendants' Brief, the Court's count begins from that page.

guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*; *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, "a document integral to or explicitly relied on in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted and alteration in the original).

## III. DISCUSSION

The State Defendants move to dismiss Shuranda's Section 1983 and New Jersey State Constitution claims based on the state-created danger doctrine. (Defs.' Br. 7). The Court first considers Plaintiffs' argument that this Court already addressed the State Defendants' arguments in favor of dismissing Shuranda's state-created danger claims in its July 23, 2012 Opinion, and that, as a result, the State Defendants are improperly seeking to relitigate those arguments. (Pls.' Opp'n Br. 2-4, ECF No. 77). Plaintiffs' argument is unavailing.

While the State Defendants previously sought to dismiss Plaintiffs' Section 1983 claims against them, they did not specifically seek to dismiss Shuranda's state-created danger claims. *Melendez v. Shack*, No. 12-1925, 2013 WL 3873255, *8-10 (D.N.J. July 24, 2013). Indeed, the State Defendants argued only that the lack of allegations constituting violations of clearly established statutory or constitutional rights in Plaintiffs' Second Amended Complaint entitled them to qualified immunity. *Id.* In addressing that argument, the Court noted the following two general points pertaining to Shuranda's Section 1983 claims. *Id.* at *9. First, the Court noted

4

that in making their qualified immunity argument, "the State Defendants neglect[ed] to mention the substance of [Shuranda's] claims, namely that through continued lying and misrepresentation of facts to [Shuranda] as well as the state court, Defendants wrongfully deprived her of custody of A'Sierra and visitation rights over a number of years." *Id.* Second, the Court noted that the Third Circuit has recognized that parents have a constitutionally protected liberty interest in the custody, care, and management of their children. *Id.* (citations omitted).

The Court, however, did not specifically address whether Shuranda could bring a Section 1983 or New Jersey State Constitution claim under the state-created danger doctrine. *Id.* at *8-10. To the extent that the Court even mentioned the state-created danger doctrine, it noted merely that A'Sierra, and not Shuranda, had asserted such a claim in the Second Amended Complaint. *Id.* at *8-9. Thus, it is appropriate for the Court to now consider for the first time whether Shuranda's Section 1983 and New Jersey State Constitutions claims premised on the state-created danger may proceed.

The state-created danger doctrine is a narrow exception to the general rule that the Due Process Clause of the Fourteenth Amendment does not impose an affirmative obligation on states to protect their citizens from private harms. *Henry v. City of Erie*, 728 F.3d 275, 286 (3d Cir. 2013); *Phillips*, 515 F.3d at 235 (citing *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195-96 (1989)). The doctrine generally provides that a state may be held liable where it "acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (emphasis in original and citation omitted). To state a claim under the doctrine, a plaintiff must plead the following four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

5

> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006) (citations omitted).

The crux of Shuranda's Section 1983 state-created danger claim is her allegation that the State Defendants foreseeably and directly caused her to sustain emotional, psychological, and/or psychiatric harm by preventing her from visiting or regaining custody of A'Sierra.[4] (Compl. ¶¶ 385-86). The State Defendants argue that this claim cannot proceed because it does not satisfy the fourth element of the above test, which predicates liability upon the state acting in a manner that exposes a plaintiff to danger. (*See* Defs.' Br. 8-9). According to the State Defendants, their alleged actions—preventing Shuranda from visiting or regaining custody of A'Sierra—did not increase Shuranda's exposure to the type of "danger" envisaged by the Third Circuit's state-created danger doctrine jurisprudence. (Defs.' Reply Br. 6-7, ECF No. 78). While the Third Circuit has allowed state-created danger claims to proceed where a state's actions exposed a plaintiff to physical danger, the State Defendants maintain that the Third Circuit has never allowed such a claim to proceed where a state's actions exposed a plaintiff to only emotional danger. (*See id.* at 6). Thus, the State Defendants argue that Shuranda's state-created danger claim cannot proceed here "because no relationship between the State and her existed that could have—or did—create *physical* danger for [Shuranda]." (Defs.' Br. 9 (emphasis in original)).

---

[4] Plaintiffs' Opposition Brief clarifies that Shuranda allegedly suffered only "mental, emotional and psychological harm" by being deprived of her constitutionally protected right to raise and maintain a relationship with A'Sierra. (Pls.' Opp'n Br. 17-18). Based on Plaintiffs' clarification, to the extent that the Complaint alleges physical harm, those allegations apparently apply only to A'Sierra. (*See* Compl. ¶¶ 386, 413).

6

The Third Circuit first explicitly considered whether a plaintiff had stated a viable claim under the state-created danger doctrine in *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1373-76 (3d Cir. 1992) (en banc). As is relevant here, the Third Circuit stated in *D.R.* that "[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to plaintiffs' detriments in terms of *exposure to danger*." 972 F.2d at 1374 (emphasis added). The Third Circuit did not explicitly hold that such danger must be physical in nature in *D.R.* That said, to the extent that the Third Circuit has held that a state-created danger claim either raised a triable issue of fact or stated a plausible claim for relief, it has only done so when the underlying facts involved exposure to physical danger.

Indeed, the case in which the Third Circuit first adopted the state-created danger doctrine, *Kneipp v. Tedder*, involved a physical danger. 95 F.3d 1199 (3d Cir. 1996). The plaintiffs in *Kneipp* were the parents and legal guardians of Samantha Kneipp. 95 F.3d at 1201. On a cold winter's evening, Samantha and her husband, Joseph, were walking home from a tavern when the defendant, Officer Tedder, stopped them for causing a disturbance near their home. *Id.* at 1201-03. According to Joseph, Samantha was visibly intoxicated and had difficulty walking. *Id.* at 1201. Eventually, a separate group of police officers arrived at the scene and permitted Joseph to go home. *Id.* at 1202. Joseph did so, assuming that because Samantha was drunk, the officers would take her to either the hospital or the police station. *Id.* But Officer Tedder instead sent Samantha home alone. *Id.* About two hours later, Samantha was found lying at the bottom of an embankment near the Kneipps' home. *Id.* at 1203. As a result of her exposure to the cold, she sustained permanent brain damage. *Id.*

In addressing the fourth element of the state-created danger doctrine, the Third Circuit concluded in *Kneipp* that there was sufficient evidence "that Officer Tedder and the other police

7

officers used their authority as police officers to create a dangereous situation or to make Samantha more vulnerable to danger . . . ." *Id.* at 1209. The police officers did so by sending Joseph home, detaining her, "and then sending her home unescorted in a seriously intoxicated state in cold weather . . . ." *Id.* Recently, the Third Circuit clarified that the police officers' "actions—intervening, detaining, and then releasing—were akin to throwing [Samantha] into a 'snake pit.'" *Brown v. Sch. Dist. of Phila.*, 456 F. App'x 88, 92 (3d Cir. 2011) (quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)).

The facts of *Kneipp* support the conclusion that a state-created danger claim cannot proceed unless the plaintiff is exposed to physical danger. *See Kneipp*, 95 F.3d at 1205 ("Samantha Kneipp's case presents the right set of facts which, if believed, would trigger the application of the state-created danger theory."). Moreover, the cases that informed the Third Circuit's decision to adopt the state-created danger doctrine in *Kniepp* also support that conclusion. *Id.* at 1206, 1209; *See Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993), *cert. denied*, 510 U.S. 947 (1993) (state defendant officer removed sober driver from vehicle and left behind a passenger whom he knew to be drunk with the keys to the vehicle); *Freeman v. Ferguson*, 911 F.2d 52 (8th Cir. 1990) (state defendant police chief, by interfering with police officers' enforcement of restraining order, created the danger which resulted in the victims' deaths); *Wood v. Ostander*, 879 F.2d 583 (9th Cir. 1989), *cert. denied*, 498 U.S. 938 (1990) (state defendant officer stranded the plaintiff, a female passenger of a drunk driver, on the side of the road in a high crime area at 2:30 a.m.); *Cornelius v. Town of Highland Lake*, 880 F.2d 348 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066 (1990) (state defendants assigned inmate with a violent history to a community work squad at the town hall where plaintiff, a town clerk, worked).

The Third Circuit next concluded that a state-created danger claim raised a triable issue of fact in *Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003), another case involving a physical danger. In *Smith*, with regard to the fourth element of the state-created danger doctrine, the Third Circuit concluded that there was sufficient evidence to allow a reasonable juror to find that the defendants, a number of state troopers, placed the decedent, Robert Smith, "in a foreseeably dangerous position." 318 F.3d at 510. The troopers did so by activating a heavily armed special emergency response team (the "SERT") against Smith, a former police officer and Vietnam veteran who suffered from Post-Traumatic Stress Disorder and coronary heart disease, in an attempt to flush Smith from his house. *Id.* at 501-02, 510. The SERT entered and cleared Smith's home using rocks, tear gas, and flash bangs, which caused Smith to flee to a nearby densely wooded area. *Id.* at 503-05. The SERT then "confine[d Smith] to the densely wooded area, block[ed] his route of return, reject[ed] the use of search dogs, [did] not allow family or friends to communicate with him . . ., and search[ed] only a short distance into the woods . . . ." *Id.* at 510. Smith eventually died of a heart attack in the woods. *Id.* at 504-05. Clearly, the defendant state troopers exposed Smith to physical danger.

The Third Circuit once again concluded that a state-created danger claim raised a triable issue of fact in *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004). *Rivas* also involved the creation of a physical danger. 365 F.3d at 185-88. The defendants, two emergency medical technicians ("EMTs"), requested police backup to handle the decedent, an allegedly dangerous man coming out of a seizure. *Id.* When the police officers arrived, the EMTs neglected to inform them about the decedent's medical condition and forfeited control of the situation to them. *Id.* Because of the EMTs' actions, the police officers placed the decedent on a stretcher in an improper fashion, which eventually caused him to die of asphyxia. *Id.* Were it not for the

EMTs' acts, the decedent presumably could have remained in his apartment for the duration of his seizure without incident. *Id.* at 197. Based on these facts, the Third Circuit concluded that since a reasonable juror could conclude that the EMTs had created an opportunity for harm that would not have otherwise existed, there was a triable issue of fact as to the fourth element of the state-created danger doctrine. *Id.*

In *Phillips v. County of Allegheny*, another case involving physical danger, the Third Circuit held that the plaintiff's state-created danger claim stated a plausible claim for relief against two of the defendants. 515 F.3d at 243. The defendants, employees at a 911 call center, supplied a coworker, a disgruntled ex-boyfriend, with information to help him locate his former girlfriend and her then-boyfriend, Phillips. *Id.* at 229. At the time, the coworker was out on suspension because he had attempted to locate his former girlfriend and Phillips's whereabouts using the call center's computers. *Id.* at 228. Eventually, the coworker used the information supplied by the defendants to locate and kill Phillips. *Id.* at 229. With regard to the fourth element of the state-created danger doctrine, the Third Circuit held that the defendants "undertook affirmative actions which worked to [Phillips's] detriment by exposing him to danger," danger that was certainly physical in nature. *Id.* at 237.

The upshot of these precedents is that, in order to satisfy the fourth element of the state-created danger doctrine, a plaintiff must allege that the state defendant affirmatively acted in a way that exposed her to *physical* danger.[5] As Shuranda has not alleged that the State Defendants

---

[5] Plaintiffs argue that a plaintiff need not sustain a "physical" harm to state a claim under the state-created danger doctrine. (Pls.' Opp'n Br. 17-18). Instead, according to Plaintiffs, "the requirement to sustain a claim (as it pertains to 'harm') is that the harm must be foreseeable and fairly direct." (*Id.*). "Harm" and "danger" are distinct concepts under the state-created danger doctrine. *See Sanford*, 456 F.3d at 304-05 (noting that a foreseeable and fairly direct harm is the first element of the doctrine while an affirmative act that creates a danger is the fourth element of the doctrine). Although this Court concludes that a plaintiff must be exposed to physical danger to satisfy the fourth element of the state-created danger doctrine, it declines to conclude at this time that the plaintiff must sustain a physical harm as a result of such exposure. However, other district courts have drawn that conclusion. *See Holmes v. Geider*, No. 10-6831, 2011 WL 3497009 *2 n.5 (E. D. Pa. Aug. 10, 2011) ("Because [plaintiff] has not alleged

10

placed her in physical danger, the Court dismisses her Section 1983 state-created danger claim (Count XVII) with prejudice.

The Court also dismisses Shuranda's New Jersey State Constitution state-created danger claim (Count XIX) with prejudice. In *Gonzales v. City of Camden*, the New Jersey Superior Court, Appellate Division, declined to recognize the existence of a state-created danger cause of action under the New Jersey State Constitution insofar as that cause of action would impose liability under a broader range of circumstances than the United States Constitution. 375 N.J. Super. 339, 351 (N.J. Super. A.D. 2003). Thus, because Shuranda's Section 1983 state-created danger claim fails to state a claim for the aforementioned reasons, her New Jersey State Constitution state-created danger claim fails to state a claim, as well.

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** the State Defendants' motion to dismiss Counts XVII and XIX of Plaintiffs' Complaint. Those Counts are dismissed with prejudice.

DATED: 20 of May, 2014

JOSE L. LINARES
U.S. DISTRICT JUDGE

---

any harm resulted from Defendants' actions, except for his emotional distress, he also does not have a claim under the state-created danger theory); *Wright v. Evans*, No. 07-3725, 2009 WL 799946 *10 (D.N.J. Mar. 24, 2009) (suggesting that a state-created danger claim is viable only when the plaintiff is physically harmed).