**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELENDEZ-SPENCER, *et ano.*, <br> PlaintiffS, <br><br> v. <br><br> GLORIA SHACK, *et al.*, <br> Defendants. | Civil Action No.: 12-1925 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants New Jersey Department of Children and Families ("DCF"), Allison Blake, Sebastian Anthony, Carlos Novoa, Joyce Smith, Gloria Shack, Gloria Cameron-Walton, Migdalia Diaz, Eileen Crummy, Regina Troutman, Christian Arnold, Linda Higgins (also pled as "Linda Higgings"), and Jean Louis-Henry's (collectively "Individual Defendants") (DCF and Individual Defendants shall collectively be referred to as "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Federal Rule of Civil Procedure 56.1 (ECF No. 116). Plaintiffs have opposed Defendants' Motion (ECF No. 117), to which Defendants have replied (ECF No. 118). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment.

# I.    BACKGROUND[1]

This matter revolves around the alleged improper removal of Plaintiff A'Sierra Spencer ("Plaintiff Spencer"), a minor at the time, from the custody of her mother, Plaintiff Shuranda Sha'Kaarii Melendez-Spencer ("Plaintiff Melendez"). (*See generally* Plaintiffs' Fourth Amended Complaint (ECF No. 68; Def. SMF ¶ 2)). Plaintiff Spencer's grandmother initially notified DCF that Plaintiff Melendez was abusing Plaintiff Spencer on November 26, 2001.[2] (Def. SMF ¶ 3). According to Plaintiff Spencer's grandmother, Plaintiff Spencer was kicked out of her home by Plaintiff Melendez after Plaintiff Spencer missed her school bus. (Id.). Plaintiff Spencer, who was nine years old at the time, was then forced to cross a busy highway in order to walk to school by herself. (Def. SMF ¶ 4).[3] The allegation was later substantiated.[4] (Def. SMF ¶ 5).

---

[1] These background facts are taken from the Defendants' statements of material facts, pursuant to Local Civil Rule 56.1 (ECF No. 116-3 ("Def SMF")), Plaintiffs' responses thereto (ECF No. 117-1 ("Pl. Rep. SMF")), Plaintiffs' Counterstatement of Material Facts (ECF No. 117-2 ("Pl. SMF")) and Defendants' Reply to Pl. SMF (ECF No. 118 ("Def. Rep. SMF")).

[2] The Court deems this statement admitted, despite Plaintiffs' assertion that it is disputed. This is because Plaintiffs have not meaningfully responded to Defendants' statement. Rather, Plaintiffs provide the following response: "Disputed. The Plaintiffs have no knowledge of the purported events other than **Defendants' Exhibit A** presented by the Defendants. The document presented was allegedly created eight years after the alleged incident and is so removed that this alleged fact cannot accepted." (Pl. Rep. SMF ¶ 3) (emphasis in original). "*A party asserting that a fact cannot be or is genuinely disputed must support the assertion by*" either "*citing to particular parts of materials in the record,* including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" or "*showing that the materials cited do not establish the absence or presence of a genuine dispute,* or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1) (emphasis added). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the Court may . . . consider the fact undisputed for the purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2). Although Plaintiffs claim the statement contained herein is in dispute, they have not support their assertion with citations to materials in the record as required by Rule 56(c)(1), nor have they supplied the Court with any authority indicating the date of creation of a document renders it irrelevant. Thus, the Court accepts this specific statement as true for purposes of this motion.

[3] The Court deems this statement admitted despite Plaintiffs' assertion that is in dispute. Plaintiff responds to this statement by pointing to Defendants' Exhibits AI and AJ. Exhibit AI is a DCF "Contact Sheet" that pertains to an incident that occurred on April 9, 2010, nearly nine years after the incident subject to this statement. Exhibit AJ is a DCF "Assessment Sheet" authored on April 12, 2010, also nearly nine years after the incident discussed in this statement. Plaintiffs' response that DCF placed Plaintiff Spencer in harm's way nine years after she crossed a busy highway to get to school on her own simply is illogical. Simply put, Plaintiffs have not responded in anyway whatsoever as to whether Plaintiff Spencer was forced to cross a busy highway on the subject date. Hence, the Court accept this specific statement as true.

[4] This Court deems this statement admitted for the reasons set forth in n. 2, *supra*.

On July 3, 2003, DCF was once again notified by Plaintiff Spencer's grandmother that Plaintiff Melendez beat Plaintiff Spencer with a wire hanger. (Def. SMF ¶ 6). Plaintiff Spencer was interviewed and advised that "this behavior had been going on for the past two years." (Def. SMF ¶ 7). DCF launched an investigation and substantiated the allegations "noting [Plaintiff Spencer] had a visible mark and that [Plaintiff Spencer] stated that [Plaintiff Melendez] struck her. (Def. SMF ¶ 8).[5] On July 16, 2003, and as a result of the July 3, 2003 incident, DCF filed a "Verified Complaint for Custody." (Def. SMF ¶ 10). On that date, Judge William A. Daniel, J.S.C. determined that "the removal of [Plaintiff Spencer] … was necessary to avoid ongoing risk to the life safety and health of" Plaintiff Spencer. (Def. SMF ¶ 11).

Plaintiff Melendez was then ordered to undergo a psychological evaluation to determine her competency to care for Plaintiff Spencer. (Def. SMF ¶ 12). Subsequently, on February 4, 2004, Judge Daniel held a fact finding hearing, where he heard testimony from various witnesses, including DCF employees and Plaintiff Melendez herself, and determined that "DCF had proven by a preponderance of 'the competent, material and relevant evidence[]' that [Plaintiff Melendez] had 'unreasonably inflicted excess corporeal punishment on [Plaintiff Spencer].'" (Def. SMF ¶¶ 13-14). "Judge Daniel further found that, 'pursuant to N.J.S.A. 9:6-8.46[,] proof of the abuse as to [Plaintiff Spencer] shall be evidence of abuse or neglect of any other child…[,]'" and granted physical custody to Plaintiff Spencer's father. (Def. SMF ¶¶ 15-16). DCF retained legal custody,

---

[5] Plaintiffs purport to dispute this statement, but once again have failed to meaningfully dispute the facts contained therein. Plaintiffs respond by stating "Disputed. The investigation was on-going and was still under investigation on July 3, 2003." Nothing in Plaintiffs' response addresses whether DCF conducted an investigation, whether Plaintiff Spencer had signs of physical abuse on her body, or the fact that the investigation substantiated the allegations of physical abuse. Thus, the Court deems the statement admitted by Plaintiffs.

care, and supervision of Plaintiff Spencer. (Def. SMF ¶ 16). To date, the findings of the Court remain in place. (Def. SMF ¶ 17).

On April 28, 2004, Plaintiff Melendez's visitation rights were temporarily suspended and she was ordered to undergo psychiatric evaluation. (Def. SMF ¶ 19). Dr. Ronald W. Crampton, a psychiatrist, concluded that Plaintiff Melendez should not have unsupervised visits with her children, including Plaintiff Spencer, and recommended "only therapeutically supervised ones." (Def. SMF ¶ 20). On May 26, 2004, Plaintiff Melendez underwent a psychological examination by Dr. Margaret Doherty Delong, Psy. D. (Def. SMF ¶ 21). Dr. Delong's report noted that "[s]everal reported incidents indicate that [Plaintiff Spencer's] visitation with her mother would be detrimental, even in a supervised setting." (Def. SMF ¶ 22)(quotations in original). Additionally, Dr. Delong recounted that Plaintiff Melendez "reportedly had an 'outburst' in court, resulting in the judge suspending visitation with her children." (Def. SMF ¶ 23)(quotations in original). Thus, Dr. Delong concluded that "[i]t [did] not appear to be in [Plaintiff Spencer's] best interest to have contact with her mother. (Def. SMF ¶ 23).

Thereafter, on July 14, 2004, Plaintiff Spencer's father was granted legal custody of her. (Def. SMF ¶ 24). "DCF was granted continued care and supervision." (Id.). Over the course of the next few years, Plaintiff Melendez continued to contact Plaintiff Spencer and be subject to various investigations for abuse of Plaintiff Spencer. (Def. SMF ¶ 18). For example, further allegations of prior abuse were made on May 25, 2006, when DCF received allegations of sexual abuse which were forwarded to the Linden, New Jersey Police Department. (Def. SMF ¶ 25). On September 11, 2006, Plaintiff Spencer told the Linden Police Department Officer that she was raped by Plaintiff Melendez's boyfriend when she was five years old. (Def. SMF ¶ 26).

4

Subsequently, on February 28, 2007, "DCF sent a comprehensive report to the Honorable Roberto Alcazar, J.S.C. that informed the court, among other things, about caseworker interviews with [Plaintiff Melendez] concerning the alleged rape of [Plaintiff Spencer] by [Plaintiff Melendez's] boyfriend, Joseph Bianco, several years earlier, and allegations that [Plaintiff Melendez] had [Plaintiff Spencer] take nude photographs of her to be posted on the internet." (Def. SMF ¶ 27). Said report contained a number of allegations of abuse and neglect relating to Plaintiff Melendez's treatment of Plaintiff Spencer. (Def. SMF ¶ 28). These allegations were then memorialized in a DCF's screening summary dated March 13, 2007. (Def. SMF ¶29).

Judge Robert Kirsch, J.S.C. was notified in 2010 that Plaintiff Melendez filed an administrative appeal of the above-mentioned findings that was forwarded to the Office of Administrative Law in 2009, and that "DCF 'decided not to go forward with a hearing … and changed the findings to unfounded[,]' because of several factors including that Plaintiff Melendez had previously been substantiated for physical abuse, and the investigating caseworker was no longer available." (Def. SMF ¶ 31). "The reason for changing the 2007 referral had nothing to do with a determination that [Plaintiff Melendez] being [sic] 'exonerated.'"[6] (Def. SMF ¶ 32). Therein, DCF also stated that it decided to no longer proceed with the hearing in connection with

---

[6] The Court deems this stated admitted, despite Plaintiffs' assertion that it is in dispute. This is because Plaintiffs only respond by stating the statement is disputed and include their own purported version of the fact stated therein, but fail to cite to any fact or evidence in support of their contention. As noted in n.2, *supra*, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by" either *"citing to particular parts of materials in the record,* including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" or *"showing that the materials cited do not establish the absence or presence of a genuine dispute,* or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1) (emphasis added). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the Court may . . . consider the fact undisputed for the purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2). Therefore, since Plaintiffs have failed to provide this Court with any fact or evidence contradicting Defendants' Statement of Undisputed Material Fact, ¶ 32, the Court must deem the statement as admitted by Plaintiffs.

the matter and changed its findings to "unfounded" because of Plaintiff Spencer's age, the fact that Plaintiff Melendez was already in DCF's registry for other substantiated allegations of physical abuse, and the fact that the DCF employee assigned to the file was attending graduate school in London, England thereby rendering him unavailable for said hearing. (Id.).

On February 19, 2008, DCF caseworkers recalled that Plaintiff Melendez violated a restraining order when she attempted to contact Plaintiff Spencer's biological father's wife.[7] (Def. SMF ¶ 33). DCF also reported on October 31, 2008, that Plaintiff Spencer's allegations of inappropriate sexual contact between herself and another resident of the Carrier Clinic, where she had then resided, was unfounded. (Def. SMF ¶ 34). Overlook hospital also diagnosed Plaintiff Spencer with bipolar disease and aggressiveness, "which has symptoms of 'poo judgment … or unusual sexual behavior.'" (Def. SMF ¶ 35). Plaintiff Melendez had a number of supervised visits with her other child and nine supervised telephone contacts with Plaintiff Spencer at the end of 2009. (Def. SMF ¶ 36-37). On November 5, 2009, Plaintiff Melendez had a therapeutic supervised visit with Plaintiff Spencer. (Def. SMF ¶ 37). A November 30, 2009 therapeutic update report indicated that weekly therapeutic visitation between Plaintiffs Melendez and Spencer begin immediately. (Def. SMF ¶ 38).

During this time period, Plaintiff Spencer was placed at treatment homes in Millstone and Bridgewater, NJ. (Def. SMF ¶ 39-40). Treatment homes are not foster homes, and are run by "treatment home parents." (Def. SMF ¶ 40).[8] Shortly after Plaintiff Melendez began supervised

---

[7] The Court deems this statement admitted for the reasons set forth in n. 6, *supra*.

[8] Plaintiffs purport to contradict this statement by claiming that they acknowledge that Plaintiff Spencer was not placed into a foster home, that treatment homes are under DCF supervision. Plaintiffs' assertion is not supported by citation to the record or any evidence. Moreover, this response does not appear to be directed at any of the factual assertions made in Def. SMF ¶ 40. Thus, the Court accepts all the facts in Def. SMF ¶ 40 as true.

6

visits with Plaintiff Spencer, Plaintiff Spencer's therapist requested that they cease as the visits were "detrimental to [Plaintiff Spencer's] progress in treatment." (Def. SMF ¶ 41). On January 13, 2010, Plaintiff Spencer made allegations of emotional and/or sexual abuse while in the care of her treatment home parents in Bridgewater, NJ. (Def. SMF ¶ 43). DCF immediately launched an investigation into the allegations within twenty-four hours. (Def. SMF ¶ 44). On the next day, January 14, 2010, Plaintiff Spencer "informed the DCF worker that 'eve[ryth]ing in the report was not true and [Plaintiff Melendez] twisted the story.'"[9] (Def. SMF ¶ 45). Plaintiff Spencer "also reported that she was not afraid of her treatment home parents."[10] (Def. SMF ¶ 46). A Bridgewater Police Department report related to this incident recounted a conversation with Plaintiff Spencer wherein the police officer stated "[i]t appeared that [Plaintiff Spencer] was being coached by [Plaintiff Melendez]." (Def. SMF ¶ 47). Accordingly, "DCF concluded that [Plaintiff Spencer] was appropriately cared for in the ... Bridgewater home and that the resource parents' actions did not put [Plaintiff Spencer] at the risk of harm. (Def. SMF ¶ 48).

On January 24, 2010, Plaintiff Spencer's stepmother advised DCF that Plaintiff Spencer, who was known as "a chronic runaway," had once against run away and police were already notified. (Def. SMF ¶ 49). DCF was notified on January 27, 2010 that Plaintiff Spencer had runaway once again. (Def. SMF ¶ 58). DCF contacted Plaintiff Melendez to ascertain whether she knew the whereabouts of Plaintiff Spencer one hour later. (Id.).

A psychosexual evaluation of Plaintiff Spencer conducted on February 3, 2010, and reported to Judge Kirsch on March 23, 2010, recommended residential treatment for Plaintiff

---

[9] Plaintiffs assert that this statement is disputed and that Plaintiff Spencer has denied making this statement. However, once again, Plaintiffs have failed to cite to fact or evidence supporting the contention that Plaintiff Spencer did actually refute this statement. Thus, for the reasons set forth in n. 6, the Court deems this statement admitted.
[10] The Court deems this statement admitted for the reasons set forth in n. 9, *supra*.

Spencer. (Def. SMF ¶ 53). Additionally, a screening summary dated March 29, 2010 noted that Plaintiff Spencer made allegations of repeated rape during a time period when she was residing with her father, but that the rapes occurred outside her father's home. (Def. SMF ¶ 54). DCF became aware of these allegations on March 24, 2010. (Def. SMF ¶ 55). Plaintiff Spencer explained to DCF that the rapes occurred when she had run away to Philadelphia, PA. (Def. SMF ¶ 56). DCF also "noted that [Plaintiff Spencer's biological father], who had legal custody of his daughter, had placed [Plaintiff Spencer] in the Carrier Clinic."[11] (Def. SMF ¶ 57). Plaintiff Spencer spoke with DCF workers and explained that the multiple incidents of rape when Plaintiff Spencer ran away involved dangerous encounters, which sometimes involved the exchange of money or "a place to stay." (Def. SMF ¶ 58)(quotes in original). As noted, Defendants involvement ceased when Plaintiff Spencer became an adult at the age of eighteen years old.

Based on the above factual record, Defendants have moved for summary judgment seeking dismissal of Plaintiffs' complaint in its entirety, asserting that there is no genuine issue of material fact for a jury to determine and that they are entitled to judgment in their favor as a matter of law. (*See generally* ECF No. 116-4 ("Def. Mov. Br.")).

## II.    LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to

---

[11] Plaintiffs concede that Plaintiff Spencer was not "in DCF custody for the entirety of her [*sic*] the eight years that she was removed from [Plaintiff Spencer]..." (Pl. Rep. SMF ¶ 4).

establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### III.  ANALYSIS

Defendants advance four reasons they believe they are entitled to summary judgment. (*See generally* Def. Mov. Br.). First, Plaintiff argue that the *Rooker-Feldman* doctrine and absolute immunity bar any recovery for claims related to the 2003 emergency removal of Plaintiff Spencer. (Def. Mov. Br. at 8-26). Second, Defendants aver that Individual Defendants are entitled to qualified immunity which bars Plaintiffs from recovering on any of their Federal Constitutional claims. (Def. Mov. Br at 26-47). Third, Individual Defendants assert that they are entitled to "numerous immunities" under the New Jersey Tort Claims Act thereby defeating Plaintiffs' non-Constitutional claims. (Def. Mov. Br. at 47-58). Finally, Defendants argue that Plaintiff Melendez's claims relating to events that occurred prior to 2010 are barred by the statute of limitations. The Court addresses each of these arguments separately below.

### A. Claims Relating to the 2003 Emergency Removal and the Subsequent Related Hearings are Barred by the *Rooker-Feldman* Doctrine and Absolute Immunity[12]

The *Rooker-Feldman* doctrine bars federal jurisdiction in cases "that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). Put another way, a suit in federal court is barred under the *Rooker-Feldman* doctrine where "a favorable decision in federal court would require negating or reversing the state-court decision." *Id.* at 170 n.4 (citations omitted). In order for the *Rooker-Feldman* doctrine to apply, four requirements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments;' (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining*, 615 F.3d at 166 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim" and they are "closely related." *Id.* at 166, 168.

Here, the Court finds that Plaintiffs' Constitutional claims relating to the 2003 emergency removal of Plaintiff Spencer from Plaintiff Melendez's custody, and the subsequent State Court hearings relating thereto, are barred by the *Rooker-Feldman* doctrine. Indeed, Plaintiffs' Constitutional claims meet each and every element discussed above. It is undisputed that Plaintiff Spencer was removed from her mother's custody on an emergent basis in 2003. (Def. SMF ¶ 1). New Jersey law specifically an allows emergency removal, without Court order or hearing, "if the

---

[12] The Court notes that Plaintiffs have not submitted any opposition to Defendants' *Rooker-Feldman* or absolute immunity arguments. (*See generally* ECF No. 117 ("Pl. Opp. Br.")).

child is in such condition that the child's continuance in the place or residence or in the care and custody of the parent ... presents an imminent danger to the child's life, safety, or health, and there is insufficient time to apply for a court order." N.J.S.A. 9:6-8.29(a). Additionally, it is not disputed that the Superior Court of New Jersey held a "Dodd" hearing shortly after the emergency removal of Plaintiff Spencer, consistent with N.J.SA. 9:6-8.29(a). (Def. SMF ¶ 1). At the Dodd hearing, the Court ruled in favor of DCF and determined that Plaintiff Melendez's custody of Plaintiff Spencer should be terminated. (Def. SMF ¶ 11).

That ruling, which was rendered far before this action was ever instituted, remained in place until Plaintiff Spencer turned 18 years old and was no longer subject to DCF's jurisdiction. (Def. SMF ¶ 32). As a matter of fact, not only have these rulings remained in place, but they have been affirmed twice by New Jersey's Appellate Division, also prior to this institution of the within action. (*See* Def. Mov. Br. at 16). Accordingly, those claims related to the Dodd hearing and emergency removal of Plaintiff Spencer are parallel to the State Court proceedings, where Plaintiffs did not succeed. Thus, Defendants have demonstrated that the first and third prongs of the above standard have been met here, since this Federal action stems from a State Court proceeding where Plaintiffs lost and those proceedings concluded prior to the institution of this action.

Additionally, Plaintiffs' complained of injuries in connection with the 2003 emergency removal and the subsequent hearings all arise from the State Court proceedings. This is clear since Plaintiffs claim that the 2003 emergency removal and the subsequent hearings caused them harm because Plaintiff Spencer was separated from Plaintiff Melendez. (*See* Plaintiffs' Fourth Amended Complaint (ECF No. 68 "FAC"))). In the FAC, Plaintiffs explicitly demand damages

11

stemming from the 2003 emergency removal and the subsequent hearings.  (FAC at 33-35).
Hence, the second prong of the above mentioned standard is also met.

Finally, the fourth prong of the *Rooker-Feldman* Doctrine is also present in this case.
Indeed, for this Court to find in favor of the Plaintiffs, this Court would have to review the Superior
Court of New Jersey's rulings and orders, and find that they were incorrect or improper.  Such
actions by this Court are exactly what the *Rooker-Feldman* Doctrine prohibits.  Hence, there is no
genuine issue of material fact that the *Rooker-Feldman* Doctrine applies to this case.  Therefore,
this Court may not entertain Plaintiffs' claims as they pertain to the 2003 emergency removal and
all subsequent hearings related thereto, and grants summary judgment in favor of Defendants
regarding same.

Individual Defendants are also entitled to absolute immunity for their participation in, and
preparation for, the relevant Court proceedings relating to Plaintiff Spencer's removal and the
continued separation from Plaintiff Melendez.  First, as recent as last year, the Third Circuit has
held that DCF employees, officers, and/or officials, similar to Individual Defendants, enjoy
absolute immunity when they engage in emergency removals of an at-risk child.  *Mammaro v. N.J.
Div. of Child Prot. & Permanency*, 814 F.3d 164, 166-67 (3d Cir. 2016)(the "Court has never
found a substantive due process violation when state agencies temporarily remove a child,
whatever the circumstances of the removal[]" were).  The outcome here is strictly governed by the
law set forth in *Mammaro*, as Individual Defendants were DCF employees who engaged in an
emergency removal pursuant to New Jersey law.  Thus, it is apparent that Individual Defendants
are entitled to absolute immunity in connection with the emergency removal itself.

12

Plaintiff Spencer also claims her procedural due process rights were violated by the subsequent Court proceedings stemming from the emergency removal. (FAC at ¶ 30). The Fourteenth Amendment of the United States Constitution mandates that no State "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. Hence, a state must provide sufficient process, which includes notice and the opportunity to be heard, before it deprives a person of a protected interest, including the right to family integrity. *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976). Nonetheless, the Third Circuit has explained that state social workers are entitled to absolute immunity from § 1983 claims that relate to their participation in, and preparation for, court proceedings. *See B.S. v. Somerset Cty.*, 704 F.3d 250, 269 (3d Cir. 2013)(holding that absolute immunity is applicable when a social worker's function "is still fundamentally prosecutorial in nature.").

Here, just as with their substantive due process claims, Plaintiffs' procedural due process claim also fails due to absolute immunity. As noted, Plaintiffs assert that their substantive due process rights were violated because Defendants allegedly provided false information during the court proceedings that followed the emergency removal. First, this claim fails because the record contains no facts to corroborate Plaintiffs' allegations. Moreover, it is clear that Individual Defendants are entitled to absolute immunity for their participation in, and preparation for, the aforementioned court proceedings. It is apparent from the record before the Court that Individual Defendants were acting in a prosecutorial manner when they appeared in the Superior Court of New Jersey and presented DCF's argument in support of termination of Plaintiff Melendez's custody of Plaintiff Spencer. The whole purpose of the proceedings was to terminate Plaintiff Melendez's custody of Plaintiff Spencer. As such, Individual Defendants were adverse to

13

Plaintiffs. Hence, there is no genuine issue of material fact that Individual Defendants are entitled to absolute immunity for claims stemming from the participation in, and preparation for, the court proceedings relating to the emergency removal of Plaintiff Spencer and summary judgment is granted in their favor based on same.

### B. Plaintiff's Constitutional Claims Against Individual Defendants are Inadequate and Barred by Qualified Immunity

Plaintiffs' constitutional claims against Individual Defendants are based on the theory of the duty of protect, which provides that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Nicini v. Morra*, 212 F.3d 798, 807 (3d Cir. 2000). "Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals." *Sanford v. Stiles*, 456 F.3d 298, 303-04 (3d Cir. 2009). However, there are two scenarios where a State's duty to protect or care is implicated. "First, the state has a duty to protect or care for individuals when a 'special relationship' exists." *Sanford*, 456 F.3d at 304. A special relationship exists when a state has custody over an individual. Indeed, the linchpin of special relationship is custody. *See D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1371 (3d Cir. 1992). The only other time "the state has a duty [to protect or care is] when a 'state created danger' is involved." *Sanford*, 456 F.3d at 304 (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997)). "To prevail on a state-created danger claim in the Third Circuit, a plaintiff must prove the following four elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential

14

harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Id.* at 304-305.

The Court finds that neither of the above exceptions to the general rule that a state does not have a duty to protect or care are applicable here. First, neither the record, nor Plaintiffs' Fourth Amended Complaint, contain any allegations or fact that any of Defendants created any sort of danger for Plaintiff Spencer. The allegations primarily revolve around the allegedly improper removal of Plaintiff Spencer's. No evidence has been introduced to show that the harm Plaintiff Spencer allegedly sustained was foreseeable. There have been no submissions, nor expert testimony, that shows any Defendant acted in a manner that would "shock the conscience." Plaintiffs have not provided any evidence to show that Plaintiff Spencer had any relationship with the State during this time period. As a matter of fact, while Defendants did retain supervision of Plaintiff Spencer, physical and legal custody over her was transferred to her biological father. Lastly, not a single piece of evidence is before the Court that Plaintiffs can point to which even suggests that any of the alleged harms Plaintiff Spencer was subjected to were created by Defendants.

Further, those allegations that relate to purported abuse of Plaintiff Spencer at the treatment homes and while she was separated from Plaintiff Melendez also do not give rise to liability for two reasons. First, the allegations have not been corroborated by any evidence. While the allegations may have been sufficient at the Motion to Dismiss stage, Plaintiffs must rebut the evidence presented by Defendants at the Summary Judgment phase. Here, Plaintiffs are merely

incapable of rebutting said evidence.  The record shows that any allegations of abuse either were not substantiated or occurred outside the scope of Defendants' involvement with Plaintiff Spencer, *e.g.* when Plaintiff Spencer ran away to Philadelphia.

Second, the evidence herein shows, contrary to Plaintiffs' assertions, that Plaintiff Spencer did not have a "special relationship" with the State.  Indeed, the record is clear that Plaintiff Spencer was removed from her mother's custody.  Thereafter, Plaintiff Spencer's physical and legal custody were transferred to Plaintiff Spencer's father.  The record before this Court shows that decisions regarding Plaintiff Spencer's care, whether she would be admitted to a treatment home, etc., were all beyond Defendants' control.  Accordingly, there was no special relationship between Plaintiff Spencer and any Defendant.  Thus, Plaintiffs' failure to protect or care claim fails since the record shows that there was no special relationship and there was no State created danger, and summary judgment is appropriate in favor of Defendants.

Even if Plaintiffs were capable of establishing their failure to protect or care claim, summary judgment would still be appropriate as Individual Defendants are entitled to qualified immunity.  Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "For qualified immunity to attach, an official must demonstrate his conduct was *objectively reasonable*."  Id. at 818-19 (emphasis added).

In this case, the undisputed record above shows Individual Defendants are entitled to qualified immunity.  First, nothing in the record, nor Plaintiffs' submissions, shows that Individual Defendants violated Plaintiffs' constitutional rights.  Rather, the record merely shows that

16

Individual Defendants, through DCF, were advised by Plaintiff Spencer's grandmother that Plaintiff Melendez forced Plaintiff Spencer to cross a busy highway at the age of nine years old because she missed her school bus. In response, Individual Defendants immediately removed Plaintiff Spencer from her mother's custody. Individual Defendants then participated in the Dodd hearing and provided the Superior Court of New Jersey with a report which included their findings. The State Court hearings led to a termination of Plaintiff Melendez's parental rights, and physical and legal custody being granted to Plaintiff Spencer's biological father. While under in her father's custody, Plaintiff Spencer appeared to be coerced into making false statements regarding abuse at the treatment homes. Defendants investigated those allegations and found them to be unsubstantiated. Nowhere within the record is there any evidence suggesting Defendants violated Plaintiff Spencer's constitutional rights by failing to protect her or provide her care.

Even if the Court were to view the above facts as some form of constitutional violation, Individual Defendants are still entitled to qualified immunity. This is simply because the record is void of any facts that tend to show Individual Defendants acted in an unreasonable manner. There is not a single fact in the record that indicates any other Family Services officer and/or official would have acted in any manner other than how Individual Defendants acted in this matter. There is no testimony nor affidavit from other Family Services officer and/or official that argues that Individual Defendants' actions in their emergency removal of Plaintiff Spencer, in accordance with New Jersey law, and the participation in the Dodd hearing was unreasonable. Plaintiffs do not allege that Individual Defendants made untrue statements during the Dodd hearing that would be considered unreasonable. Not a single fact has been introduced to suggest that the placement of Plaintiff Spencer with her biological father was inappropriate or unreasonable. There are also

no facts in the record that show Individual Defendants' actions and responses in connection to any one of the numerous allegations of abuse were unreasonable.

Rather, the record shows that Individual Defendants acted as reasonable Family Service officers and/or officials would act under the circumstances. Indeed, Individual Defendants were advised that a nine-year-old child was being placed in a dangerous condition. In accordance with New Jersey law, they immediately removed Plaintiff Spencer from the dangerous condition, *i.e.* Plaintiff Melendez's custody. Then, in furtherance of their duties as Family Services officers and/or officials, and in compliance with a court order, they gave testimony before the Superior Court of New Jersey. The scope of this testimony was based on the investigation conducted by Individual Defendants. That testimony, and Defendants' investigations, led to court order that placed Plaintiff Spencer in the custody of her biological father. While in her biological father's custody, Individual Defendants responded to each and every allegation of abuse by Plaintiff Spencer and launched investigations into said allegations quickly. All of these actions were reasonable given the circumstances surrounding Plaintiff Melendez's treatment of Plaintiff Spencer, and Plaintiffs have not introduced any evidence that would suggest the contrary. Accordingly, the Court concludes that there is no genuine issue of material fact that Individual Defendants are entitled to qualified immunity and their motion for summary judgment based on same is granted.

## C. Plaintiffs' Non-Constitutional Claims Also Must Be Dismissed

Counts XIII, XIV, XXIV, and XV assert common law claims of fraud, negligence, and gross negligence. (FAC at Counts XIII, XIV, XXIV, and XV). These claims must be dismissed under New Jersey's Tort Claims Act's good faith immunity and New Jersey law that prohibits

18

liability for alleged injury caused by the adoption or failure to adopt or enforce law. *See* N.J.S.A. 59:3-3; 59:2-4, respectively. Under New Jersey's Tort Claims Act, "a public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 29:3-3. A claim of negligence does not defeat the public employee's good faith immunity. *See Canico v. Hurtado*, 144 N.J. 361, 365 (N.J. Sup. Ct. 1996). The public employee is entitled to good faith immunity if he can "demonstrate 'objective reasonableness' or that he behaved with 'subjective good faith.'" *Clark v. Twp. of Mt. Laurel*, 357 N.J. Super. 362, 369 (N.J. Super. Ct. App. Div. 2003)(citing *Alston v. City of Camden*, 168 N.J. 170, 183 (N.J. Sup. Ct. 2001)). To overcome the good faith immunity, a plaintiff must show more than ordinary negligence (*see Canico*, 144 N.J. at 365), and must show that the public employee's actions "involved a crime, actual fraud, actual malice[,] or willful misconduct." *B.F. v. Div. of Youth and Family Servs.*, 296 N.J. Super. 372, 385 (N.J. Super. Ct. App. Div. 1997). Further, a public employer is entitled to enjoy any immunity or defense that shields its employees from liability. N.J.S.A. 59:2-3; 59:3-3.

The Court concludes that the aforementioned common law claims against Defendants are barred pursuant to the good faith immunity under New Jersey's Tort Claims Act. Indeed, those Counts all sound in negligence. Specifically, Plaintiffs base their claims on Defendants alleged failure to properly asses the removal of Plaintiff Spencer from Plaintiff Melendez in 2003, and alleged failure to ensure Plaintiff Spencer received adequate care thereafter. (FAC ¶ 21). The Court first notes that Plaintiffs have not pointed to any evidence that supports or corroborates the allegations in the Fourth Amended Complaint. Plaintiffs do not introduce any testimony, affidavit, or other evidence that supports their contentions that Defendants acted in the manner described in the Fourth Amended Complaint. Conversely, Defendants have attached a voluminous record

19

which shows that it is undisputed that the allegations in the Fourth Amended Complaint did not occur.

Additionally, Plaintiffs cannot meet their burden in defeating Defendants' good faith immunity defense. As noted, Individual Defendants are entitled to enjoy good faith immunity absent a showing of that they acted fraudulently, with actual malice, criminally, or their alleged misconduct was willful. The record here contains no evidence that could lead the Court to believe that Individual Defendants meet this criterion.

There have been no allegations, or evidence, that Individual Defendants acted criminally. Further, there is no evidence of any actual fraud or actual malice. Plaintiffs point to no misstatements by Individual Defendants; the record even shows that all the allegations of abuse were substantiated with the exception of the one allegation that Defendants chose to not pursue because of, *inter alia*, Plaintiff Spencer's age. Finally, there is nothing in the record to show that Individual Defendants committed any misconduct, let alone willful misconduct. Instead, as discussed above, Individual Defendants' conduct in this case appears to have been wholly reasonable. Thus, there is no genuine issue of material fact that Individual Defendants are entitled to good faith immunity and these common claims are barred by said doctrine. Further, since Individual Defendants are entitled to enjoy good faith immunity, that immunity is also enjoyed by DCF as their employer.

Plaintiffs' assertion that Defendants are liable for failing to enforce DCF's policies and procedures also fails. New Jersey law explicitly immunizes public entities from such claims. "A public entity is not liable for any injury caused by adopting or failing to adopt a law or *by failing to enforce any law*." N.J.S.A. 59:2-4. This immunity is an unqualified immunity that extends to

ministerial, as well as discretionary, duties, and does not require a showing of good faith by the entity. *See Garry v. Payne*, 224 N.J. Super. 739, 735 (N.J. Super. Ct. App. Div. 1988). Accordingly, New Jersey law is clear that Defendants cannot be liable for any failure to enforce claims advanced by Plaintiffs.

### D. All of Plaintiff Melendez's Claims that May have Accrued Prior to 2010 are Barred by the Statute of Limitations

In partially dismissing Plaintiff's Second Amended Complaint, this Court observed that "Plaintiff Melendez[] is only bringing claims arising from events which took place in 2010." (ECF No. 32). However, as Defendants correctly note, the FAC could be construed to assert § 1983 claims that arose prior to 2010. To the extent Plaintiff Melendez is asserting claims that arose prior to 2010, those claims are barred by the relevant statutes of limitations discussed below.

All of Plaintiff Melendez's claims under common law, the New Jersey Civil Rights Act, and the U.S. Constitution are subject to a two-year statute of limitations. First, it is well known that § 1983 does not contain a statute of limitations provision. *See Wilson v. Garcia*, 471 U.S. 261, 268 (1985). Accordingly, the Supreme Court in *Wilson* explained that the statute of limitations for § 1983 claims is governed by the forum State's statute of limitations governing tort actions. *Wilson*, 471 U.S. 275-76, 280. Moreover, the personal injury statute of limitation applies even if the forum State has a different statute of limitations for intentional torts. *See Owens v. Okure*, 488 U.S. 235, 236 (1989). In New Jersey, personal injury actions are subject to a two-year statute of limitations, which the Third Circuit has held is applicable to § 1983 claims brought in New Jersey. *See* N.J.S.A. 2A:14-2a; *see also Cito v. Bridgewater Twp. Police Dept.*, 892 D.2d 23, 25 (1989).

State law also governs whether the statute of limitations is tolled by the pendency of prior litigation in § 1983 actions. *See Ammlung v. Chester*, 494 F.2d 811, 815 (3d Cir. 1974). In New Jersey, "statute[s] of limitations governing the timeliness of an action will not be tolled for a pending determination in another tribunal unless there is an exhaustion requirement." *W.V. Pangborne & Co., Inc. v. N.J. Dep't of Transportation*, 116 N.J. 543, 556 (N.J. Sup. Ct. 1989). Finally, § 1983 claims are not subject to any exhaustion requirements of any judicial or administrative remedies. *See Ellis v. Dyson*, 421 U.S. 426, 432 (1975). Accordingly, the statute of limitations governing Plaintiff Melendez's § 1983 claims are subject to a two-year statute of limitations which has not been tolled by the pendency of the prior Superior Court of New Jersey proceedings.

Here, Plaintiffs initial complaint was filed on March 27, 2012. (ECF No. 1). Thus, to be timely, any claim contained in the FAC needed to accrue on or after March 27, 2010. Based on the above law, any claims prior to March 27, 2010 would be barred by the pertinent statute of limitations. However, Plaintiff Melendez makes no allegations that any alleged constitutional violations occurred on March 27, 2010 or thereafter. Hence, there is no genuine issue of material fact that all of Plaintiff Melendez's claims are untimely and barred by the statute of limitations, and Defendants are entitled to summary judgment on said claims.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is granted in its entirety and Plaintiffs' Fourth Amended Complaint is hereby dismissed with prejudice.   An appropriate Order accompanies this Opinion.


DATED: April 5, 2017

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE